UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANGELA PEREZ,

        Plaintiff,           **COMPLAINT**

                            Case No.: 1:25-CV-0001 (MAD/DJS)

vs.

NEW PALTZ CENTRAL SCHOOL DISTRICT
and STEPHEN GRATTO,

        Defendants.
-----------------------------------------------------------x

    By and through her counsel, Michael H. Sussman, Esq., plaintiff Angela Perez hereby alleges the following against the defendants named herein:

**PARTIES**

    1. Plaintiff ANGELA PEREZ [hereinafter "Perez" or "plaintiff"] is a United States citizen who resides in the State of New York and within this judicial district.

    2. Defendant NEW PALTZ CENTRAL SCHOOL DISTRICT [hereinafter "the district"] is a duly created municipal corporation responsible for the operation of the New Paltz public school system. It may sue and be sued.

    3. Defendant STEPHEN GRATTO is defendant district's Superintendent of Schools and is sued in his individual capacity.

**JURISDICTION**

    4. As plaintiff alleges that defendants violated the equal protection clause of the Fourteenth Amendment when it and its agents intentionally discriminated against her based on her national origin and/or retaliated against her for her opposition to discrimination based on national origin, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4), and 42 U.S.C. secs. 1983 and 1988.

## **BACKGROUND**

5. Plaintiff Angela Perez is a Hispanic female of legal age.

6. Perez served as a bilingual social worker for defendant district from September 2021 until her termination effective on June 30, 2024.

7. With English language learner enrollment outside New York City rising 8% from 2019-20 to 16% in 2022-23 [according to State Education Department data], Perez played a vital role in helping address the district's shortage of bilingual staff.

8. Her primary responsibilities in New Paltz included providing individual and group counseling services, maintaining records, providing crisis assessments and interventions, making referrals, assisting with student attendance, conducting social histories, participating in student support meetings (IST, CSE, and 504), consulting with outside agencies, and collaborating with school staff.

9. Unlike other social workers who were assigned to one or two district schools, Perez often served students, parents and staff at all four: New Paltz High School ["NPHS"], New Paltz Middle School ["NPMS"], Lenape Elementary School ["Lenape"], and Duzine Elementary School ["Duzine"], causing her the burden of traveling between the schools and having to learn the personalities of many more stakeholders than the other social workers.

10. In comparison, Laura Wild, a Caucasian female, was hired as a social worker the same month as Perez and assigned a permanent office at Lenape.

11. Likewise, Jennifer Hite, a Caucasian female, was hired as a social worker after Perez and assigned to NPHS for her first two school years.

12. In contrast, during the 2021-22 school year, Perez split her time between all four schools, spending two days weekly at Duzine and NPHS and one day weekly at Lenape and NPMS.

13. Ironically, defendants later used Perez's required travel between schools against her, claiming colleagues could not track her whereabouts.

14. In 2021-22, Perez did not have adequate resources or support across these multiple locations.

15. In addition, at Duzine, Principal Ross Hogan assigned Perez to a room with old furniture that created safety hazards, resulting in a student cutting his eyebrow.

16. The same year, Perez's workspace was further disrupted when the school used her room to host its Christmas Giving Tree program for more than two weeks.

17. Perez was also displaced during book fairs twice that year and forced to work from a toddler-sized chair in the hallway.

18. No other service provider, each of whom was Caucasian, was treated in like manner.

19. Perez reported this disparate treatment to her direct supervisor, Director of Pupil Personnel Services and Special Education Janety Encarnacion, who spoke to Principal Hogan.

20. However, after Encarnacion spoke with Hogan, instead of addressing Perez's concerns, the latter's attitude toward Perez hardened.

21. After this confrontation, Hogan falsely claimed to then-Superintendent Urbina Medina that Perez failed to provide him with a work schedule.

22. When Perez again requested a suitable workspace from Hogan, he claimed none was available.

23. Toward the end of the 2021-22 school year, Perez was finally moved into a more appropriate space, but a month later, she was forced to relocate, causing further work-related disruptions.

24. Despite Perez's efforts to build positive working relationships, her coworkers undermined her by dismissing her in meetings, spreading rumors, and deliberately ignoring her in the hallways.

25. During a staff meeting, Perez's colleagues falsely accused her of failing to support other social workers even though she offered to help them numerous times.

26. When Perez enthusiastically volunteered to help with wellness initiatives like Worry Warriors and Banana Splits, her coworkers consistently rejected her offers.

27. At a superintendent's conference, Perez was assigned to collaborate with colleagues Meri Lederer, Renee Reynolds, Tara LaMonica, and Laura Wild on social-emotional lessons.

28. Despite her repeated attempts to contribute, Perez's colleagues dismissed her suggestions, leaving her feeling marginalized and unwelcome.

29. Again, despite the falsity of the claim, defendants later averred that Perez failed to "effectively collaborate" with her team members.

30. During the 2021-22-year, Perez's work environment at other schools was also poor.

31. At Lenape, Perez was never properly onboarded, receiving neither a staff introduction and tour nor office space, and she was forced to work from the reading room for two years.

32. At NPHS, ENL teacher Sean Doyle's hostile behavior toward her during several meetings became so concerning that she requested a meeting to address his conduct.

33. At NPMS, Principal Ann Sheldon initially placed Perez in a green room with broken furniture, away from her from other social workers and guidance counselors who were located in the student support office, though Perez eventually moved there after several months.

34. Throughout the year, ENL teachers, particularly Amy Chapman, and Duzine staff repeatedly requested Perez perform translation duties without supervisory approval, going so far as to contact her personal cellphone outside of business hours.

35. These translation tasks fell well outside Perez's role as a social worker and were not requested of her similarly situated Caucasian coworkers.

36. During the 2022-23 school year, Perez's situation worsened.

37. At NPHS, Perez was forced to relocate her office to accommodate an Astor Services clinician.

38. At Duzine, Hogan relegated Perez to the building's most isolated room with child-sized furniture.

39. In contrast, he provided the Caucasian social worker, Hite, with an appropriate office and workspace.

40. Overwhelmed by mounting translation duties, Perez requested a meeting with Coordinator of Special Education Kathleen Coughlin to clarify her role and address concerns about competing demands on her time from multiple building administrators.

41. Rather than providing relief, during their meeting on September 7, 2022, Coughlin added to Perez's already excessive workload by assigning her additional non-ENL-mandated students.

42. At this point, Perez was already managing a demanding schedule: working with students across five ENL classes at Lenape and four ENL classes at Duzine; running three lunch groups at NPMS for 6th-8th grade ENL students, facilitating an anxiety lunch group at NPHS, and maintaining communication with many mono-lingual Hispanic parents.

43. The hostile work environment continued as Meri Lederer falsely accused Perez of showing inappropriate materials to children.

44. During this time period, David Rosenfeld repeatedly made inappropriate remarks toward Perez during parent and staff meetings.

5

45. During one meeting, Rosenfeld demeaned Perez, telling her, "No one likes you. Everyone seems to have a problem with you."

46. Perez raised concerns about Rosenfeld's behavior but received no support.

47. In March/April 2023, Superintendent Stephen Gratto informed Perez that her then-grant-funded position would be terminated at the end of the school year.

48. Shortly after, NPMS Assistant Principal Jessica Miller and Principal Sheldon accused Perez of neglecting her responsibilities with respect to a PINS case.

49. In fact, Perez had a mandatory CSE meeting for a high school student at NPHS at the same time, precisely the type of scheduling issue she tried to resolve during her September meeting with Coughlin.

50. Miller and Sheldon's accusation deliberately ignored this legitimate conflict and Perez's extensive districtwide responsibilities.

51. On April 24, 2023, Perez elevated her concerns to Deputy Superintendent Linda Olamarx, requesting role clarification and support.

52. Perez noted that during her employment, she had never received a description of her duties and responsibilities.

53. Despite promising to research comparable bilingual social work models, Olamarx never provided a job description, which allowed defendants to continuously expand Perez's role without clear boundaries or limitations.

54. Taking advantage of Perez's undefined role, on May 3, 2023, Olamarx and Coughlin met with plaintiff and her union representative to request she take on additional responsibilities to address students' emotional injuries arising from COVID.

55. Once again, Olamarx and Coughlin failed to provide the job description Perez had repeatedly requested.

56. Later that school year, when the New Paltz Board of Education discussed budget challenges and potential staff reductions, including the elimination of plaintiff's position, Spanish-speaking community members vocally opposed cuts that would affect Perez's role.

57. Coughlin later visited Hite's office to check in with her while deliberately avoiding Perez's office, making Perez feel further unsupported.

58. On the last day of the 22-23 school year, the NPHS secretary demanded that Perez, but not Hite or other coworkers, surrender her district keys and badge.

59. Only after Assistant Principal Kathleen Schneck-Suma intervened were Perez's keys returned.

60. During summer 2023, Coughlin personally informed Hite of her two-building assignment for the upcoming year.

61. Despite Perez's multiple attempts to contact Coughlin about her assignment, Coughlin never responded.

62. Perez had to learn about her more demanding three-building assignment from a colleague, Lisa Watkins, after the 2023-24 school year had already begun.

63. In September, Coughlin used an NPMS staff meeting to target Perez by announcing the termination of "all social work grant positions," even though Perez was the sole employee hired under the grant.

64. That fall, through physical isolation, Perez was further excluded from collegial interaction with other professionals and suffered a diminution of her professional responsibilities.

65. NPMS Principal Sheldon initially placed Perez in Room 59, which was distant from other staff offices.

66. Sheldon later forced Perez to relocate to former social worker Olivia Profaci's space, which lacked a functioning phone.

67. Perez was denied other essential work resources, such as a mailbox, even after three years of service.

68. Sheldon routinely dismissed Perez's professional contributions with patronizing remarks like, "That is so sweet of you to want to help."

69. Meanwhile, at Duzine, Hite was granted office space and permission to run the Banana Splits and Worry Warriors programs, the same activities Perez had volunteered for but was denied.

70. Perez was belittled in other ways in 2023-24; for instance, NPMS Assistant Principal Jessica Miller twice attempted to damage Perez's professional reputation in front of parents.

71. In November 2023, when Perez refused to share her personal phone number with social worker David Rosenfeld, he began spreading negative rumors about her.

72. After that, Deputy Superintendent Olamarx publicly humiliated Perez during a superintendent meeting by announcing to Rosenfeld, "You can have my number and share it with everyone you want."

73. This incident came after Rosenfeld had inappropriately questioned Perez about the number of children she had, which Perez understood as a reference to stereotypes about Hispanic women and family size.

74. Throughout her employment and despite her comparatively heavier districtwide workload, Perez's colleagues routinely expected her to perform additional duties outside her social work role—expectations not required of other social workers.

75. These expanded responsibilities included translation services, Spanish communications coordination, and extensive parent communication regarding non-counseling matters. Examples include:

   a. In October 2021, Perez provided Spanish translation for another social worker's counseling consent forms and managed scheduling communications in Spanish for an NPMS ENL teacher's students.

   b. In November 2021, Perez served as a Spanish translator for other staff members' communications with parents regarding student needs and a districtwide vaccination initiative.

   c. In January 2022, Perez covered another social worker's conflict management lessons and assisted Spanish-speaking families with IEP paperwork for students not on her caseload.

   d. In March 2022, Perez provided translation services during parent-teacher conferences at Lenape.

   e. In June/July 2022, Perez communicated bus information and summer programming details to Spanish-speaking families, facilitated testing with PNW BOCES for a student who had a meeting for CSE eligibility, and gathered IEP information for another social worker's student.

   f. In September 2022, Perez translated numerous documents at Duzine, including CSE consent forms, event notifications about the postponed Trunk or Treat event, and bus/transportation updates. Perez also translated and communicated information about free and reduced lunch programs to Lenape families.

 g. From November 2022 through March 2023, Perez continued to provide translation for other staff members' parent-teacher conferences across multiple buildings, made early dismissal calls in Spanish to families, communicated about student fundraisers, and followed up with families regarding paperwork to create 504 plans for students not on her caseload.

 h. In May 2023, despite discussions about distinguishing social work from translation duties, Duzine Principal Ross Hogan requested that Perez assist with kindergarten screening translations, noting in his request the ongoing confusion between these roles. She also communicated about school events to Spanish-speaking families.

76. Despite being burdened with additional responsibilities never demanded of her similarly situated Caucasian colleagues, Perez consistently earned exemplary performance reviews from district leadership throughout her tenure:

 a. In October 2021, Director of Student Supports Frederika Butler praised Perez as "highly professional, skilled, caring" and "exactly what a school social worker should be."

 b. In April 2022, Director of Pupil Personnel Services and Special Education Janety Encarnacion noted Perez "successfully linked services to learning with no loss of instructional time" during a well-sequenced conflict resolution lesson.

 c. In January 2023, Director of Student Supports Butler further praised Perez for her "excellent" and "highly appropriate" lesson, highlighting her "valuable interactive and thought-provoking" content and "engaged, excited, and participat[ing]" students. Butler also recognized Perez as "highly valuable" to the district, citing her "expertise, years of experience, and genuine manner."

    d. In May 2023, Duzine Principal Hogan praised Perez's "positive rapport with students" and their strong engagement with lesson concepts, noting diverse participation and expressing enthusiasm for future observations.

    e. That same month, Coordinator of Special Education Coughlin described Perez as "warm" and "caring" toward students and "conscientious" about lesson delivery, noting her enthusiasm for Perez's continued service.

77. Though Perez maintained positive evaluations and demonstrated regular support for school staff, in February 2024, Coughlin and Encarnacion met with Perez to deliver an ultimatum: resign by month's end or face termination at the school year's close.

78. During this brief 25-minute meeting, Encarnacion admitted to not understanding the nature and responsibilities of Perez's districtwide work for Spanish-speaking students and families.

79. Coughlin failed to provide any evidence of inadequate performance and offered no substantive counter to Perez's claim that the district improperly expanded her assignment, retaliating against her and the Hispanic community she served after they had opposed eliminating her externally funded position the previous spring.

80. Following this meeting, Superintendent Gratto formally notified Perez of his intent to terminate her employment effective June 30, 2024.

81. When Perez requested written justification on March 1, 2024, Gratto responded on March 11 with four baseless reasons for her termination: Perez's alleged failure to participate in an April 2023 student PINS intake; lack of "meaningful participation" in developing the December 2023 Middle School Guidance Plan; non-participation in a staff restorative circle during 2023-2024; and ineffective collaboration on mental health and social-emotional learning lesson plans from 2021-2023.

82. Gratto's letter notably abandoned defendant district's previous justification that Perez's termination was due to expired grant funding.

83. Perez formally refuted these allegations in a March 25, 2024 letter:

   a. Regarding the PINS allegation, Perez related that she had completed all required paperwork, coordinated with the guidance counselor and parents, and received confirmation from DSS that her presence was not required. Her May 2023 evaluation made no mention of this alleged issue.

   b. On the Guidance Plan matter, Perez explained that her contributions matched those of her Caucasian coworkers. The district never defined "meaningful participation" nor documented any concerns about her involvement.

   c. As for the restorative circles, Perez regularly conducted restorative conversations with students, contradicting claims of non-participation. The district maintained no documentation of concerns in this area and had never before raised the issue.

   d. Gratto failed to provide specific examples of inadequate lesson plan collaboration, and no such concerns appeared in any of Perez's evaluations.

84. On March 18, 2024, Perez filed a timely grievance against defendant district for failing to conduct required observations during the 2023-2024 school year and terminating her without warning in violation of Article 4A §§ 4, 7, and 8 of the New Paltz United Teachers contract.

85. Under Article 4A § 4, consistent with New York State tenure law, defendant must provide written recommendations for improvement as needed.

86. Perez received no such recommendations before her termination.

87. Under Article 4A, Section 7, defendant district must conduct three formal observations annually.

88. Perez did not receive any observation during the 2023-2024 school year.

89. At the time of her termination and during her entire employment, Perez's file contained only five observations, all satisfactory and positive, with none conducted during the 2023-24 school year.

90. Under Article 4A, Section 8, defendant must provide written warning if an observation or evaluation does not support reemployment, followed by a conference to discuss specific concerns.

91. Defendants provided plaintiff no such warning and instead terminated Perez.

92. On March 27, 2024, Gratto denied Perez's grievances, claiming Article 4 only applies to classroom teachers and dismissing her concerns about missed evaluations as "counterproductive" and "untimely."

93. Gratto falsely claimed that plaintiff's termination stemmed from her "working relationships with other faculty" and job duties, alleging supervisors had advised her of these issues when they occurred, though no documentation exists of any such warnings and none occurred.

94. After denying her grievance, defendants retaliated against Perez by completing a belated, biased evaluation on June 17, 2024.

95. Coughlin's evaluation, conducted after defendant finalized Perez's termination, served no legitimate purpose for performance improvement, and instead was used to further disparage Perez and create a post-hoc paper trail to justify her termination.

96. Coughlin issued an "unsatisfactory" rating, providing no legitimate justification for her criticisms and contradicting years of positive reviews.

97. The evaluation cited baseless claims about lack of participation in student initiatives, poor attendance, and insufficient colleague collaboration despite Perez's documented history of extensive support to colleagues who relied on her for translation services.

Case 1:25-cv-00001-MAD-DJS    Document 1    Filed 01/02/25    Page 14 of 15

98. Coughlin characterized Perez as "unwelcoming" and "passive," contradicting prior evaluations that praised her professionalism and rapport.

99. The evaluation also falsely claimed Perez had "very limited" professional relationships and did not "readily engage" with social workers, ENL teachers, or administrators, ignoring her extensive work with staff across all four schools during the prior four years.

100. Coughlin's dismissive conclusion about Perez's departure reflected the retaliatory nature of her evaluation: "Ms. Perez is not returning to the district in September."

101. Rather than conduct a good-faith performance review, defendants intentionally used this evaluation to manufacture post-hoc justifications for Perez's termination and retaliate against her for filing grievances that opposed discrimination based on her national origin and the Spanish-speaking community she served.

102. Defendant Superintendent Gratto's support was required before the School Board could tenure plaintiff.

103. By refusing to support plaintiff for tenure, defendant Gratto intentionally doomed her candidacy and functioned as the final decision-maker for the school district.

104. The School Board never considered plaintiff for tenure because Gratto intentionally refused to propose her tenure.

105. The predictable consequence of defendant Gratto's opposition to plaintiff's tenure was the termination of her employment.

106. Throughout her tenure, despite facing undue burdens from colleagues and administrators, Perez excelled as a bilingual social worker and built strong relationships with students and families while meeting the needs of the district's growing Spanish-speaking population.

14

107.    Defendants' intentionally discriminatory and retaliatory actions not only caused Perez significant emotional distress and financial hardship but also deprived the Spanish-speaking community of a trusted advocate and dedicated professional.

**CAUSES OF ACTION**

108.    Plaintiff incorporates by reference paragraphs 1-107 as fully set forth herein.

109.    By failing to tenure plaintiff and firing her from her bilingual social worker position despite her satisfactory and positive performance and in contravention of the procedures set out both in its contract and state law, defendants intentionally discriminated against plaintiff on the basis of her national origin in violation of the Equal Protection clause of the Fourteenth Amendment as made actionable pursuant to 42 U.S.C. section 1983.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Honorable Court accept jurisdiction over this matter, convene a jury to determine all issues within its jurisdiction, award to plaintiff compensatory and punitive damages as permitted by law, including back pay with interest and front pay, require defendants to pay plaintiff's reasonably incurred litigation costs and attorney's fees and enter any other judgment or order which the interests of law or equity require.

Dated: December 5, 2024

                                Respectfully submitted,

                                 _____
                                MICHAEL H. SUSSMAN [103324]
                                Counsel for Plaintiff
                                Sussman & Associates
                                1 Railroad Avenue, 3rd Fl.
                                P.O. Box 1005
                                Goshen, NY, 10924
                                (845)-294-3991
                                Sussman1@sussman.law